UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE LAZARUS HOLDINGS, LLC,                    CASE NO. 8:13-bk-9698-CPM
_____          CASE NO. 8:13-ap-848-CPM

LAZARUS HOLDINGS, LLC,

      Appellant,

v.                                              CASE NO. 8:15-cv-1429-T-23

J. O. DELOTTO & SONS, INC., et al.,

      Appellees.
_____/

## ORDER

     After petitioning for bankruptcy, Lazarus Holdings, LLC, sued

(No. 8:13-ap-848, Doc. 1) both J. O. DeLotto & Sons, Inc., and Safeco Insurance

Company of America in an adversary proceeding.[1]  In accord with an arbitration

provision in the parties' contract, the bankruptcy judge directed (Doc. 4-80) the

parties to submit the dispute to arbitration, and DeLotto prevailed (Doc. 4-98) in the

arbitration.  In a June 2015 order (Doc. 4-1), the bankruptcy judge vacated one of the

---

[1] This order describes DeLotto and Safeco collectively as "DeLotto."

independent justifications for the arbitration award but confirmed the remainder of the award.  Lazarus appeals and DeLotto cross-appeals.[2]

## BACKGROUND

Lazarus contracted with DeLotto, a general contractor, to build Lazarus's veterinary facility.  The parties' contract requires arbitration of "any Claim," which means any "demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract" and "also includes other disputes and matters in question between [Lazarus] and [DeLotto] arising out of or relating to the [contract]."  (Doc. 4-117 at 49, 51)

Before DeLotto completed construction, Lazarus (1) declared that DeLotto breached the contract, (2) petitioned for bankruptcy, and (3) sued DeLotto in an adversary proceeding.  (*See* Doc. 4-114)  The adversary complaint asserts claims including breach of contract, tortious interference, and breach of a performance bond.  (Doc. 4-114 at 12–19)  Seeking reimbursement for unpaid work on the veterinary facility, DeLotto submitted in the debtor's action a claim for $137,138.14.  (Doc. 4-123 at 1–3)  DeLotto moved to compel arbitration, and a January 2014 order (Doc. 4-80) grants the motion and directs the parties to arbitrate their dispute.

---

[2] A September 16, 2016 order (Doc. 34) consolidates the appeals.

The American Arbitration Association's Construction Industry Arbitration Rules (the AAA construction rules) governs the parties' arbitration.  (Doc. 4-117 at 51)  Rule R-23 of the AAA construction rules requires the arbitrator and the parties to attend a preliminary hearing at which "the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute."[3] At the preliminary hearing, DeLotto "offered to provide an answering statement on DeLotto's behalf . . . to the extent that [DeLotto's] Proof of Claim did not suffice" (Doc. 29 at 11), but the arbitrator confirmed that a formal answering statement was unnecessary.[4]  (Doc. 4-105 at 3)  Describing the arbitration's "filing requirements," Rule R-4 states:

> (c) *Answers and Counterclaims*
>
>> i. *Answering Statement*: A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant

---

[3] Rule R-23 states that "Sections P-1 and P-2 of [the AAA construction rules] address the issues to be considered at the preliminary hearing." Notably, Section P-1(b) warns, "Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious."

[4] The parties submit no transcript or recording of the preliminary hearing. However, in this appeal and in the adversary proceeding, DeLotto consistently asserts that at the preliminary hearing both Lazarus and the arbitrator stated "that [filing an answering statement] was not necessary." (Doc. 4-105 at 3; Doc. 29 at 11) On appeal, Lazarus fails to rebut or to otherwise dispute DeLotto's description of the preliminary hearing. (*See* Doc. 15 at 23–24; Doc. 32 at 5–21)

> and to all other parties to the arbitration. If no answering
> statement is filed within the stated time, the respondent
> will be deemed to deny the claim. Failure to file an
> answering statement shall not operate to delay the
> arbitration.

Soon after the preliminary hearing and because DeLotto filed no answering statement, Lazarus moved for an order "estopping" DeLotto from asserting an affirmative defense. (*See* Doc. 4-102 at 13)  However, the arbitrator bypassed Lazarus's motion and "ordered the arbitration to proceed on all claims and defenses." (Doc. 4-105 at 3)

At the arbitration hearing, DeLotto argued — as a defense to Lazarus's claim of breach of contract — that Lazarus's fraudulent procurement of the contract rendered the contract "void *ab initio*." (Doc. 4-102 at 16)  DeLotto presented testimony demonstrating that Lazarus "materially altered the [contract] without DeLotto's knowledge prior to its execution." (Doc. 4-105 at 4)  Delotto argued also that Lazarus could not prevail in the arbitration because Lazarus unlawfully interfered with the construction of the veterinary facility.  (*See* Doc. 4-105 at 5) Concluding that Lazarus fraudulently procured[5] the contract and that Lazarus unlawfully interfered with the construction of the facility, the arbitrator denied

---

[5] The parties describe DeLotto's defense sometimes as "fraudulent procurement" and sometimes as "fraudulent inducement." (*See, e.g.*, Doc. 32 at 7, 8) Because the arbitral award uses the term "fraudulent procurement" (Doc. 4-98 at 2), this order adopts the term as a matter of convenience.

(Doc. 4-98) each of Lazarus's claims against DeLotto.  Also, the arbitrator awarded DeLotto $137,138.14 for work completed on the facility.  (Doc. 4-98 at 1–2)

In the adversary proceeding, Lazarus moved (Docs. 4-102) under Section 10 of the Federal Arbitration Act (FAA) to vacate the award.  Although rejecting Lazarus's claim that the arbitrator was not impartial (Doc. 4-36 at 6–8), the bankruptcy judge determined that the arbitrator "went outside the scope of the issues that he was supposed to determine."  (Doc. 4-36 at 6, 8, 26)  The bankruptcy judge reasoned that, by allowing DeLotto to argue fraudulent procurement in defense to Lazarus's claims, the arbitrator misapplied, and exceeded his authority under, Rule R-4(c) of the AAA construction rules.  (Doc. 4-36 at 17–19, 26)

A June 2015 order (Doc. 4-1) grants in part Lazarus's motion to vacate the arbitration award and vacates the arbitrator's determination that Lazarus's fraudulent procurement voided the contract.[6]  (Doc. 4-1 at 2)  However, on the basis that Lazarus unlawfully interfered with construction of the veterinary facility the June 2015 order confirms the award "in all [other] respects" and upholds both the award of $137,138.14 and the denial of Lazarus's claims.  (Doc. 4-1 at 2)

---

[6] The June 2015 order incorporates by reference the bankruptcy judge's reasoning announced at a March 2015 hearing (Doc. 4-36) but not stated in the written order. (Doc. 4-1 at 2)

**DISCUSSION**

Lazarus appeals and DeLotto cross-appeals.  Lazarus argues in the appeal that, if a circumstance warrants vacatur of an arbitration award under Section 10(a), the proper remedy is to vacate the entire award — not a part of the award — and to order a new arbitration.  (Doc. 15 at 12)  In other words, according to Lazarus, the bankruptcy judge erred by vacating only a part of the award (although Lazarus argues that only a part of the award was erroneous).  (Doc. 32 at 16–19)  DeLotto argues in the cross-appeal that the arbitrator in hearing DeLotto's affirmative defense "did not exceed his powers" and that the bankruptcy judge erred in vacating the part of the award that determines the contract is void due to Lazarus's fraudulent procurement of the contract.  (Doc. 29 at 18)

Because the parties challenge only the legal conclusions in the June 2015 order, review is de novo. *Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 562 Fed. Appx. 828, 830 (11th Cir. 2014) (per curiam); *Frazier v. CitiFinancial Corp.*, LLC, 604 F.3d 1313, 1321 (11th Cir. 2010).

**1. No occurrence from the arbitration warrants vacatur under the FAA.**

Section 9 of the FAA requires confirmation of an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11."  The law presumes that an arbitration award "will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible" *Wiand v. Schneiderman*, 778 F.3d

917, 925 (11th Cir. 2015) (quoting *Frazier*, 604 F.3d at 1321); *accord Int'l Broth. of Elec. Workers, Local Union 824 v. Verizon Florida, LLC*, 803 F.3d 1241, 1246 (11th Cir. 2015) ("In light of very strong federal policy in favor of finality for arbitration awards, the arbitrator's decision is entitled to 'considerable deference.'").

Sections 10 and 11 provide "exceedingly narrow grounds upon which an award can be vacated, modified, or corrected."[7] *S. Communications Servs., Inc. v. Thomas*, 720 F.3d 1352, 1357 (11th Cir. 2013).  A party seeking under Section 10(a) to vacate an award "bears a heavy burden," *Wiand*, 778 F.3d at 925, and must prove at least one of four grounds:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration —
>
> > (1) where the award was procured by corruption, fraud, or undue means;
> >
> > (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[7] Section 11 allows for modification or correction of an award "in the event of such things as miscalculation of figures and mistakes as to description." *Thomas*, 720 F.3d at 1357. Because neither party sought to modify or correct the award, Section 11 is irrelevant to this appeal.

definite award upon the subject matter submitted was not made.

Each of the four subsections of Section 10(a) describes a defect or failure of the integrity of the arbitration and requires a showing of a form of misconduct or misbehavior — not a showing of mere error.  And, reasonably, the defenses to confirmation listed in Section 10(a) are exclusive, narrow, and few.[8]  *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015).

**A. Section 10(a)(4)**

The parties agree that the bankruptcy judge, partially vacating the arbitration award solely under Section 10(a)(4) (Doc. 4-36 at 28; Doc. 15 at 15; Doc. 29 at 12–14; Doc. 32 at 6), determined that the arbitrator exceeded the arbitrator's authority by permitting DeLotto to argue an affirmative defense at the arbitration hearing after DeLotto was relieved — with the arbitrator's acquiescence — from filing an answering statement.  (Doc. 4-1 at 2; Doc. 4-36 at 17–19, 26)  Stated differently, according to the bankruptcy judge, the arbitrator exceeded his authority by misapplying the AAA construction rule that governs the "answering statement." However, misapplication of a procedural rule is not a basis for vacatur under Section 10(a)(4).

---

[8] Although several "judicially-created grounds" for vacatur once existed, *Frazier*, 604 F.3d at 1324, holds that the "judicially-created grounds" are no longer valid after *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008). *Hall Street* holds that sections 10 and 11 "provide exclusive regimes for the review provided by the [FAA]." 552 U.S. at 590.

Section 10(a)(4) permits vacatur only if an arbitrator resolves a dispute or a facet of a dispute that the arbitrator lacks contractual authority to resolve. Thomas H. Oehmke, *Commercial Arbitration*, Vol. 4, § 146:1 (2016) ("The inquiry as to whether the arbitrators exceeded their powers focuses on the contractual authority of the arbitrator to decide an issue, not whether the issue was correctly decided.").[9] The parties' contract broadly authorizes the arbitrator to resolve "any Claim" "arising out of or relating to the [contract]." (Doc. 4-117 at 49, 51)  Because the scope of the contract's authorization includes a claim of breach of contract and necessarily includes a defense to the claim of breach of contract, including a dispute about whether Lazarus fraudulently procured the contract and whether, as a result, the contract is void, the bankruptcy judge clearly erred by applying the remedy of vacatur — whether to all or to any part of the award under Section 10(a)(4).

Lazarus argues that the arbitrator exceeded his authority because a January 2014 order (Doc. 4-80), which directs the parties to arbitration, "determined . . . that a valid and enforceable contract had been formed." (Doc. 15

---

[9] *See also Johnson*, 797 F.3d at 1302 ("To vacate an award under § 10(a)(4), [i]t is not enough to show that the arbitrator committed an error — or even a serious error. . . . [T]he sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." (internal quotation marks omitted)); *Fowler v. Ritz-Carlton Hotel Co., LLC*, 579 Fed. Appx. 693, 699 (11th Cir. 2014) (per curiam) ("[W]e will not entertain arguments that the arbitrator 'exceeded her powers by acting contrary to the law' because we do not review the arbitrator's award for underlying legal error."); *White Springs Agric. Chemicals, Inc. v. Glawson Investments Corp.*, 660 F.3d at 1281 (11th Cir. 2011) (stating that, in "the context of vacating an arbitration award under § 10(a)(4)," "it is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable" (internal quotation marks omitted)).

at 36)  Lazarus's argument fails because, although a challenge to the validity of an

arbitration provision "standing alone" "must be resolved by the court before deciding

a motion to compel arbitration," a challenge to the validity of a contract "as a whole"

is reserved "for the arbitrator to decide." *Wiand*, 778 F.3d at 924.  DeLotto's

argument that Lazarus fraudulently procured the contract addresses "the contract's

validity and . . . go[es] to the arbitrator." *Wiand*, 778 F.3d at 924 (citing *Jenkins v.*

*First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 881 (11th Cir. 2005) (holding

that whether a contract is void "is an issue for the arbitrator, not the court, to

decide")).[10]

**B. Section 10(a)(3)**

Under Section 10(a)(3), a court can vacate an award if the arbitrator is "guilty

of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in

refusing to hear evidence pertinent and material to the controversy; or of any other

misbehavior by which the rights of any party have been prejudiced."  On appeal,

Lazarus fails to allege that the arbitrator — owing to misconduct — either refused a

request to postpone the arbitration hearing or refused to hear evidence proffered by

---

[10] *See also* Martin Domke, *Domke on Commercial Arbitration*, Vol. 1, § 11:1 (2016) ("Federal law has, as clearly stated [by the Supreme Court], embraced the doctrine of 'separability,' under which the arbitration clause is considered an agreement apart from the principal contract. Under this theory the issue of fraudulent inducement of the main contract, as well as other claims made by a party to a contract containing the broad arbitration agreement, go directly to arbitration . . . . Courts may not consider challenges to a contract's validity or enforceability as defenses against arbitration, and arbitration clauses will be treated as severable from the documents in which they appear unless there is a clear intent to the contrary.").

Lazarus.  Also, Lazarus fails to argue on appeal that the arbitrator's purported

misapplication of the AAA construction rules constitutes prejudicial "misbehavior"

under Section 10(a)(3).  Accordingly, this argument is waived.  *Hamilton v. Southland*

*Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (holding that a party's failure

"to make arguments and cite authorities in support of an issue waives it").

　　　　Regardless, the arbitrator committed no prejudicial "misbehavior" by

permitting Lazarus to argue fraudulent procurement at the hearing.  The bankruptcy

judge interpreted Rule R-4(c) to state that, unless a respondent to an arbitration files

an answering statement, the respondent waives all affirmative defenses.  (Doc. 4-36 at

17–19, 26)  However, Rule R-4(c) states only that a respondent "may" file an

answering statement.  "Must," which the AAA construction rules uses elsewhere,[11]

signals an obligation, but "may" is permissive.

　　　　Rule R-4(c) prescribes no penalty — and certainly not waiver of all defenses —

for not filing (especially with the acquiescence of the arbitrator) an answering

statement.  The bankruptcy judge's interpretation silently and retrospectively imports

into the arbitration from Rule 8(c), Federal Rules of Civil Procedure,[12] the idea of a

---

[11] For instance, if before an arbitration hearing a party seeks to "increase or decrease the amount of its claim or counterclaim," Rule R-6(a) states that the party "must" provide written notice "to the AAA and all parties."

[12] *See* Wright & Miller, *Federal Practice & Procedure*, Vol. 5, § 1278 (3d ed. 2016) ("[A] failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case.").

waiver of affirmative defenses, an importation the arbitrator declined to impose (especially after permitting, in the absence of an answering statement, a full-blown factual and legal presentation on fraud in the procurement). Section P-1 of the AAA construction rules warns that care "must be taken to avoid importing procedures from court systems." Given the nearly complete deference due an arbitrator's resolution of a procedural matter, the arbitrator's decision at the arbitration hearing to permit DeLotto to prove the well-known defense of fraudulent procurement presents not a trace of the "misbehavior" required under Section 10(a)(3) to avoid confirmation. *See Brown v. Brown-Thill*, 762 F.3d 814, 819 (8th Cir. 2014) (Loken, J.) ("When an arbitration has been completed and a court is asked to vacate the award because the arbitrator was guilty of or permitted the prevailing party to commit procedural irregularities, we must . . . accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds.").

Also, after DeLotto at the arbitration hearing presented testimony demonstrating that Lazarus "materially altered the [contract] without DeLotto's knowledge prior to its execution" (Doc. 4-105 at 4), Lazarus received an opportunity to cross-examine the witness and to call rebuttal witnesses. (*See* Doc. 4-105 at 4–5) Weeks after the hearing, the arbitrator permitted Lazarus to submit a written closing argument, in which Lazarus could have discredited or otherwise addressed DeLotto's fraudulent-procurement defense. (*See* Doc. 4-102 at 16) Accordingly, Lazarus fails to

- 12 -

meet his heavy burden of demonstrating that the arbitrator's decision prejudiced Lazarus.  *See Wiand*, 778 F.3d at 925.

### C. Section 10(a)(1) and (2)

Arguing for vacatur of the award under Section 10(a)(1) and (a)(2), Lazarus alleged in the bankruptcy court that the arbitrator "manifested evident partiality" and "facilitated the procurement of [the] award by [] corruption, fraud, or undue means . . . perpetrated by DeLotto."  (Doc. 4-102 at 20)  The bankruptcy judge rejected these arguments (Doc. 4-36 at 6–8), and on appeal Lazarus asserts no argument requiring consideration of Section 10(a)(1) or (a)(2).  (*See* Doc. 15 at 12; Doc. 32 at 5–21)

### 2. This order need not resolve Lazarus's argument about partial vacatur.

Because this order holds (as advanced in the cross-appeal) that no occurrence at the arbitration warrants vacating any part of, much less all of, the arbitration award, this order need not resolve Lazarus's argument that, if a ground for vacatur under Section 10(a) is "found to exist," complete — as opposed to partial — vacatur, along with a new arbitration, is the proper remedy.  However, partial vacatur is certainly permitted and regularly awarded under Section 10(a).  *See, e.g.*, *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 (11th Cir. 1988) (vacating part of an arbitration award under Section 10(a)); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) (Hall, J.) (stating that under Section 10(a) a "federal court may

- 13 -

vacate an arbitration award, or a portion thereof, if the arbitrators acted beyond their authority"); *Katz v. Feinberg*, 167 F. Supp. 2d 556, 565, 573 (S.D.N.Y. 2001) (Haight, J.) (vacating part of an arbitration award under Section 10(a)).

## CONCLUSION

The arbitrator neither exceeded his contractual authority nor committed "misbehavior" by permitting DeLotto to prove at the arbitration hearing the defense of fraudulent procurement. The part of the bankruptcy judge's June 2015 order (Doc. 4-1) that vacates the part of the arbitral award determining that Lazarus's fraudulent procurement rendered the contract void is **REVERSED**. This action is **REMANDED** with instructions to the bankruptcy judge to enter a judgment under 9 U.S.C. § 9 confirming the arbitration award. The clerk is directed to close the case.

ORDERED in Tampa, Florida, on September 27, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE